### B. CARL SVERKERSON v. CITY OF MINNEAPOLIS AND OTHERS.[1]

February 3, 1939.

No. 31,727.

[1]Reported in 283 N. W. 555.

R. F. *Merriam,* for appellant.

R. S. *Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for respondents.

*Stanley B. Houck, amicus curiae,* on behalf of Northwestern Fuel Company, Flour City Coal & Oil Company, Campbell Coal & Oil Company, Hart Fuel Company, Reeves Coal & Dock Corporation, and Hartzell Coal & Oil Company.

LORING, JUSTICE.

This was a proceeding in which a declaratory judgment was sought as to the validity of a provision in an ordinance enacted by the city council of Minneapolis. The appeal is from a denial of the plaintiff's motion for a new trial. Plaintiff, Carl Sverkerson, is and has been engaged in the fuel business in Minneapolis for

about 18 years, conducting it from his residence. He owns and operates a truck which he uses to deliver fuel within the city.

As a condition precedent to engaging in the fuel business in Minneapolis, an ordinance, enacted in 1933, requires that a license must be obtained from the city. Prior to 1937 plaintiff was a licensed fuel dealer. In 1937 the city council amended the ordinance of 1933 and provided that no license should be issued or renewed unless the applicant first filed with the proper officer a certificate of insurance, issued by a company authorized to do business in the state, stating that the applicant was insured for $10,000, against liability imposed by law on account of death or injuries to any person, and in the sum of $5,000, against such liability on account of property damage. Plaintiff has been unable to secure a license to operate as a fuel dealer since he does not carry the requisite insurance on his truck.

In June, 1937, plaintiff, for himself and others similarly situated, instituted this declaratory judgment proceeding. The trial court made findings of fact and conclusions of law sustaining the assailed portion of the ordinance.

The first point urged is that the charter of Minneapolis does not empower the city to require a fuel dealer to obtain such an insurance policy as a condition precedent to his conducting business.

By chapter 4, § 5, the city council of Minneapolis is given "full power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the government and good order of the city * * * as it shall deem expedient." It is this clause which is often referred to as the "general welfare clause." There are other provisions granting power over streets and regulating the selling of firewood and coal. However, we think the validity of the ordinance in question must stand or fall upon the general welfare clause.

It formerly was the rule in this state that a narrow construction should be given to the legislative powers conferred by the so-called general welfare clause. City of Virginia v. Erickson, 141 Minn. 21, 168 N. W. 821; cf. State v. Sugarman, 126 Minn. 477, 148

N. W. 466, 52 L.R.A.(N.S.) 999. Recently a more liberal view has been adopted, and the clause has been relied upon to sustain ordinances reasonably related to the good order of the city, although there was no enumerated grant of power relating to the subject of the legislation. State v. Dirnberger, 152 Minn. 44, 187 N. W. 972 (the right of the city of Minneapolis to license laundries sustained under the general welfare clause although the charter did not grant specifically the power to regulate laundries); Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6 (this same clause held to justify licensing of gasoline filling stations on private property although there was no specific grant of power, the court stating, p. 278: "There is however a tendency to permit the common council to legislate for the accomplishment of the objects mentioned in the general welfare clause though a specific grant is wanting."); State v. Morrow, 175 Minn. 386, 387, 221 N. W. 423 ("Such a general welfare clause as that found in the charter of Minneapolis is intended to make the powers of the council sufficiently expansive to enable them to meet and provide for new conditions as they arise."); State v. Sugarman, 126, Minn. 477, 148 N. W. 466, 52 L.R.A.(N.S.) 999 (general welfare clause held to authorize an ordinance intended to prevent the obstruction of the street).

The general welfare clause found in the charter is sufficient to justify the ordinance before us. The protection of personal and property rights on the streets of the city is a part of the power of the council in the maintenance of good order. The lawmaking body has a wide latitude in considering what is an evil and what is necessary for the good order of the community. "It is largely a matter of discretion with the legislature to determine the subjects of police regulation, and the mode and extent of such regulation. It is not for the courts to determine the wisdom or expediency of police legislation." 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1605. Coal and other fuels generally are sold during the winter months. Delivery is made by the use of trucks upon the streets of the city. The loads are of necessity bulky and heavy. The transportation

occurs at a time of the year when ice is prevalent upon the streets and travel in general hazardous. Consequently we do not find a basis upon which to say that the action of the council is unrelated to the good order of the city. Since we believe it was, assault upon this ground must fail.

Nor do we think the ordinance is arbitrary and unreasonable so as to violate the constitutional limitations imposed by U. S. Const. Amend. XIV, or Minn. Const. art. 1, § 7. There is a presumption in favor of constitutionality. City of St. Paul v. Clark, 194 Minn. 183, 259 N. W. 824. Nothing in the record indicates the action was capricious or unreasonable in light of the evil which the legislative body of the city considered to exist. "It is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate." 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1605. Vehicles present an ever increasingly difficult problem to every city of the nation. The ordinance herein contested attempts to meet a problem which all are aware exists. The mere fact that it is difficult to produce evidence to show the law is unreasonable is a factor favoring constitutionality rather than the reverse. As matters now stand, we cannot say the council invaded the cloak of protection cast by the constitutional limitations before mentioned.

■ It is further contended that the ordinance is violative of Minn. Const. art. 4, § 27, which provides that no law shall embrace more than one subject which shall be expressed in its title, and of chapter 4, § 8, of the Minneapolis charter, which contains a similar provision.

The ordinance as first enacted in 1933 was entitled: "An ordinance providing for and relating to the appointment and duties of weighers of fuel, and to license and regulate the sale, advertisement for sale and delivery of fuel within the city of Minneapolis, and to provide penalties for violations." The amendment of 1937 read: "An ordinance amending an ordinance entitled [herein was inserted the title of the original ordinance as quoted above] passed January 27, 1933, as subsequently amended." The amendment of

1937 made the assailed provisions relating to insurance (§ 6) a part of this ordinance.

The appellant's argument is that the ordinance deals with the regulation of sale and delivery of fuel and also with financial responsibility of the seller of fuel to another user of the streets.

To constitute duplicity of subject matter, an act must embrace two or more dissimilar and discordant subjects which cannot reasonably be said to have any legitimate connection. Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 A. S. R. 382; 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8910. An amendatory act, as here, must remain not only within the title but also germane to the subject matter of the amended act. State ex rel. Rice v. Smith, 35 Minn. 257, 28 N. W. 241; Egekvist Bakeries, Inc. v. Benson, 186 Minn. 520, 243 N. W. 853. It is the settled rule that an enactment of a legislative body should be liberally construed in favor of constitutionality. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8907. One of the reasons for the constitutional provision is to prevent surprise and fraud on the people. Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, 28 A. S. R. 382. Consequently when the parties are well aware of the provision, the objection partakes somewhat of the technical and reason for liberal construction exists.

Applying these principles, we do not think the ordinance is unconstitutional or contrary to the charter. Since the title is not an index to the law a fair suggestion of the subject matter is all that is necessary. The title indicates the purpose is to regulate delivery of fuel. The requirement of insurance is not without the pale of regulation of delivery and therefore within the title of the ordinance. The next question is whether the amendment is germane to the subject matter of the amended act. Here a more doubtful question is presented, but a constitutional construction must be adopted if reasonable. There appears a sufficiently close connection in subject matter to sustain the amendment. The original ordinance embodied detailed regulatory provisions dealing with the various aspects of the sale and delivery of fuel. The insurance requirement

found in the amendment is not so foreign to the subject matter of the amended enactment as to justify holding the ordinance unconstitutional or contrary to the charter on this ground. The matters are connected in popular significance, and that is sufficient.

■ Error is assigned on the ground that the trial judge excluded evidence of certain persons engaged in the fuel business that they never had an accident wherein liability accrued because of damage to person or property. The reasonableness and need of this ordinance cannot be attacked by testimony of selected individuals that they had not had accidents on previous occasions. It is entirely unreliable as a basis upon which to predicate a determination that the council is legislating in a field where it is not needed either as to the present or the future.

■ Evidence was received to show that it was possible to obtain an insurance policy which permitted the insured vehicle to be laid up during the summer months and the policy suspended, together with the payments. The ordinance provides that the insurance must cover the vehicle during all the time the license is in force. While the council might have made provisions which permitted such a suspension, failure to do so does not render the ordinance unconstitutional. The mere fact that a less burdensome course might have been adopted to accomplish the end does not invalidate an ordinance. Hauge v. Chicago, 299 U. S. 387, 392, 57 S. Ct. 241, 81 L. ed. 297. The city authorities may act within proper legislative discretion. The means chosen are not so arbitrary as would justify holding the ordinance unconstitutional.

■ We find nothing in the ordinance which conflicts with the provisions of the highway traffic regulation act, 3 Mason Minn. St. 1938 Supp. §§ 2720-157, 2720-158. The ordinance fundamentally is not a traffic regulation but is enacted for the welfare of the people of the city.

Since there was no error below, the order of the trial court in the premises should be, and hereby is, affirmed.

Affirmed.