CITY OF DULUTH v. JOHN E. CERVENY.[1]

December 8, 1944.

No. 33,852.

*John F. Ball* and *McMeekin & Quinn*, for appellant.

*Harry E. Weinberg*, City Attorney, and *Ray W. Bruess*, Assistant City Attorney, for respondent.

YOUNGDAHL, JUSTICE.

On February 10, 1944, in the municipal court of Duluth, defendant was convicted of the offense of keeping intoxicating liquor in his possession for the purpose of sale in violation of a city ordinance. He was brought into court on a warrant issued under Minn. St. 1941, § 340.11 (Mason St. 1940 Supp. § 3200-25). A search warrant was also obtained under § 340.65 (§ 3200-81), pursuant to which

defendant's premises were searched and about 160 cases of intoxicating liquor seized by police officers executing the warrant. Defendant was charged under the ordinance with sale and possession for sale of liquor. During the trial, he pleaded guilty to the charge of sale and was found guilty on the charge of possession for sale. Upon conviction on the charge of possession for sale, he was sentenced to pay a fine of $100, or, in default of payment, 60 days in the county work farm, and the court ordered the liquor kept in the custody of the police department until further order of the court. Defendant moved to vacate the judgment of guilty and for a judgment of not guilty or a new trial, and for an order directing the chief of police forthwith to restore the liquors to defendant. Both motions were denied, and this appeal is from the orders denying said motions.

Defendant owns and operates a restaurant at 220 East Superior street in Duluth known as "Jack's Cafe." The building in which the business is conducted consists of two stories and a basement. On the second floor are defendant's living quarters; on the first floor he operates a restaurant business. The basement is used as a storeroom. For some years prior to April 30, 1943, defendant had a license to sell intoxicating liquors on said premises. For some reason which the record does not disclose, the license was not renewed when it expired on April 30, 1943. A large stock of intoxicating liquor on hand at the expiration date of the license was stored under lock and key in the basement of the building. On December 12, 1943, defendant sold to a police officer one quart of 100 proof Blue Ribbon Kentucky Straight Bourbon Whiskey, and on January 18, 1944, one quart of 90 proof Silver Label Glenmore Kentucky Straight Bourbon Whiskey. Defendant had no license to sell liquor at the time. Both brands of whiskey sold are included in the liquor seized by the police officers. In executing the search warrant, the officers seized about 160 cases of different brands of liquor valued at between $7,500 and $8,000. Defendant paid the federal internal revenue tax on the seized liquor in June or October 1943, in the sum of $1,688.

■ Defendant contends that the city of Duluth did not have the power to enact an ordinance providing for the search, seizure, and forfeiture of intoxicating liquor, because there is no express provision in the charter authorizing such an ordinance. Duluth operates under a home-rule charter. Under its latest charter (1912 Home Rule Charter), the city is granted broad powers. It has, in addition to and not limited by the enumeration of powers in the 1900 charter, "all powers, functions, rights and privileges usually exercised by, or which are incidental to, or inhere in, municipal corporations of like power and degree; also all municipal power, functions, rights, privileges and immunities of every name and nature whatsoever." This general grant of power and authority is tantamount to that granted under a general welfare clause. State ex rel. Zien v. City of Duluth, 134 Minn. 355, 159 N. W. 792, Ann. Cas. 1918A, 683; N. P. Ry. Co. v. Weinberg (D. C.) 53 F. Supp. 133.

In his brief, defendant states:

"Of course, it is conceded that the City of Duluth has the power both from its charter and by the State law to enact an ordinance regulating in all reasonable respects the sale, dispensing and license of intoxicating liquors within its corporate limits."

Thus defendant concedes that Duluth has the power under the charter to enact an ordinance regulating the sale of liquor, but asserts that such authority did not include the power of forfeiture. With respect to the Duluth liquor ordinance,[2] it is sufficient to say that, in addition to the provisions prohibiting the sale and possession for sale of intoxicating liquors, it provides that upon a complaint being made before a judge of the municipal court charging a violation of the ordinance, the judge, in addition to issuing a warrant for the arrest of the alleged violator, shall also issue a search warrant authorizing a search of the premises where the liquors are claimed to be illegally possessed. The ordinance follows generally the pattern of the state law with reference to search and seizure, except that upon a conviction under the ordinance the

---

[2]No. 6581, passed and approved November 26, 1941.

seized liquor is forfeited to the city of Duluth, sold to the highest bidder by the chief of police, and the proceeds paid into the public safety fund of the city (section 28 of ordinance), whereas, under the state law, the liquor is sold under order of court and the proceeds paid into the county school fund. Section 340.67 (§ 3200-83). Defendant asserts that the forfeiture provision of the ordinance is invalid because there was no express power granted in the charter to enact such an ordinance. We believe that there is legislative authority for this ordinance as it relates to forfeiture. Under the "all powers" provision of its charter, Duluth was granted broad municipal power "of every name and nature whatsoever." In the Zien case, we had occasion to comment on this "all powers" provision as follows (134 Minn. 360, 159 N. W. 794):

"* * * What is meant by 'all municipal power' is not defined, but as here used the expression is obviously broad enough to include all those powers which are generally recognized as powers which may properly be given to and be exercised by municipal corporations."

By the amendment of L. 1937, c. 185, the legislature incorporated into the Minnesota statutes the search, seizure, and forfeiture provisions. Section 340.65 (§ 3200-81). Defendant does not claim that the legislature did not have the power to enact such legislation or that the state could not delegate such authority to Duluth. His contention is that the delegation of authority must be specifically declared. The legislature having such authority and the subject being one of municipal concern, the power is one of which the city was lawfully possessed under the broad charter provisions. In Park v. City of Duluth, 134 Minn. 296, 298, 159 N. W. 627, 628, this court said:

"* * * The people of a city in adopting a charter have not power to legislate upon all subjects, but as to matters of municipal concern they have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld."

See, also, State ex rel. City of St. Paul v. Oehler, 218 Minn. 290, at p. 298, 16 N. W. (2d) 765, where the Park case is cited with approval.

The power properly to effectuate the enforcement of the liquor laws by use of the search warrant and forfeiture provisions was not impliedly withheld by the state, but it seems to us clearly granted by the "all powers" provision. The retail liquor traffic is a type of business peculiarly subject not only to state but to local regulation. In Thielen v. Kostelecky, 69 N. D. 410, 416, 287 N. W. 513, 516, 124 A. L. R. 820, the court said:

"* * * The liquor traffic is one properly subject to governmental control, and the retail liquor traffic has generally been deemed one peculiarly subject not only to state but to local regulation."

In discussing the meaning of the word "regulated" as used in the provision of the liquor control act of North Dakota conferring on governmental bodies of cities the authority to regulate the retail sale of liquor, the court further said at p. 417, 287 N. W. at p. 517:

"The power 'to regulate the retail sale of alcohol and alcoholic beverages' conferred upon the governing board of a city includes the power to prescribe such reasonable rules and impose such reasonable restrictions as to the manner and circumstances in which the business shall be conducted as will tend to promote order and protect the public from harm."

In 33 C. J., Intoxicating Liquors, § 70, it is stated:

"* * * When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority to make all such ordinances as may be necessary to make the grant of power effectual, and to preserve the public peace, good order and security against dangers arising from the traffic in such liquors. It is only required that such ordinances should be within the scope of the powers granted, and not unreasonable, unjust, or unduly oppressive, or unfairly discriminating."

It is apparent that the legislature by the broad provisions in the charter intended to delegate a large measure of police power to

Duluth for the protection of life, health, and safety of its citizens. A city exercises police power within its jurisdiction to practically the same extent as the state itself. This power is not confined to the narrow limits of precedents based on conditions of a past era. Rather, it is a power which changes to meet changing conditions, which call for revised regulations to promote the health, safety, morals, or general welfare of the public. State v. Morrow, 175 Minn. 386, 221 N. W. 423. That such charter provisions must be liberally construed was settled by this court in Tousley v. Leach, 180 Minn. 293, 294, 230 N. W. 788. In taking note of the change in the general trend of our decisions relative to the legislative power conferred upon cities by the general welfare clause in their charters, we said:

"* * * It was formerly our holding that a narrow construction should be given to the legislative power conferred upon cities by its general welfare clause. * * * there is a clearly noted departure in the direction of a less restricted rule; and now legislation not authorized in specific terms but in direct and necessary aid of a specific grant is sustained."

See, also, Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944. The council's estimate of the general welfare should be followed unless it is plainly erroneous. City of St. Paul v. Fielding and Shepley, Inc. 155 Minn. 471, 194 N. W. 18. In the ordinance, the legislative body of Duluth has spoken in clear terms that it is for the general welfare of Duluth and the proper enforcement of its liquor laws that there be authority to seize intoxicating liquor and confiscate it upon conviction of an offender. We recognize that there is authority holding that express language in the charter is necessary to justify forfeiture. Henke v. McCord, 55 Iowa 378, 7 N. W. 623. Because of differences in charter provisions, however, such cases can be distinguished. In City of Miami v. Miller, 148 Fla. 349, 351, 4 So. (2d) 369, 370, relied upon by defendant, the court conceded the possibility of forfeiture by implied authority, in this language:

"We have examined the provisions of the City Charter and Ordinance relied on and find no *implied* or express authority for the Municipal Court to declare a forfeiture of the moneys in question." (Italics supplied.)

Whatever the rule may be elsewhere, we are committed to a liberal interpretation of charter provisions as to the exercise of police power by municipalities concerning matters peculiarly subject to local regulation. It cannot with good reason be denied that the search, seizure, and forfeiture provisions of the ordinance were a necessary aid to the proper enforcement of the ordinance regulating the sale of liquor, which ordinance was enacted pursuant to a specific grant of power. We believe, therefore, that, in order to make effectual the conceded grant of power to regulate the sale of intoxicating liquor, there was clear authority under the Duluth charter provisions to enact the legislation as to search, seizure, and forfeiture of intoxicating liquor.

■ Defendant also asserts that the conviction should be set aside because the search warrant was issued under the state law although he was tried under the ordinance. It is his position that, because the search warrant was obtained under the state law, it was incumbent upon the city to prosecute the case to completion under that law, and that it was not authorized to try him under the ordinance. We are of the opinion that defendant has no ground for complaint. There is no claim of any irregularity or failure to comply with the law in obtaining the search warrant or in the method of search and seizure. Defendant had the full protection of the law with reference to search and seizure. Because the state relinquished its jurisdiction and did not prosecute under the state law does not give defendant the right to object. It is not his privilege to assert under what law he shall be prosecuted. That is for the state or the municipal subdivision to determine. In State v. Anding, 152 La. 259, 262, 92 So. 889, 891, where it was held that a search warrant obtained under a different statute from that under which defendant was prosecuted for a violation of the liquor law was valid, the court said:

"* * * It is admitted that the officers did have a search warrant, but it is contended that the warrant was obtained in virtue of the Act 39 of 1921. It matters not under what statute the warrant was obtained. It is sufficient that the officers had the warrant, and that the search and seizure were therefore valid."

So, in the instant case, it was wholly immaterial that the search was made under the state law. Moreover, defendant submitted himself to the jurisdiction of the court. There was not one word of complaint as to the procedure. He pleaded guilty during the trial to the charge of sale under the ordinance, and without objection the trial proceeded on the charge of possession for sale.

The court had actual possession of the intoxicating liquor at the trial, and therefore, even though it had been unlawfully obtained, it could be used as evidence. State v. Kaasa, 198 Minn. 181, 269 N. W. 365. The basis for the forfeiture of liquor illegally possessed is the court's possession of the liquor and the conviction obtained. The proceedings to forfeit are proceedings *in rem* assimilated to a criminal action, prosecuted by the state against the thing itself, property devoted to an alleged unlawful use. State v. Hanson, 114 Minn. 136, 130 N. W. 79; Steward v. State, 180 Ind. 397, 406, 103 N. E. 316, 320. "The basic fact to the exercise of the court's jurisdiction under statutes authorizing the condemnation of outlawed property is its actual or constructive possession of the property." 30 Am. Jur., Intoxicating Liquors, § 571; Dodge v. United States, 272 U. S. 530, 532, 47 S. Ct. 191, 71 L. ed. 392. In Strong v. United States (1 Cir.) 46 F. (2d) 257, 261, 79 A. L. R. 150, case dismissed October 26, 1931, 284 U. S. 691, 52 S. Ct. 27, 76 L. ed. 583, the court said:

"When a libel is brought to condemn liquors illegally possessed, which have been seized and are in the actual or constructive possession of the court at the time the libel is filed, the seizure not being conditioned by statute upon its being lawfully made, a lawful seizure is no more essential to the jurisdiction of the court to condemn the liquors than is the lawful arrest of a person, produced

in court to answer to an indictment or criminal information, essential to its jurisdiction to pronounce sentence. *In neither case is the lawfulness of seizure or arrest of any consequence."* (Italics supplied.)

In that case the court quoted with approval Taylor v. United States, 3 How. 197, 205, 11 L. ed. 559, 563, where the court held that where the government adopts a seizure "it is wholly immaterial in such a case who makes the seizure, or whether it is irregularly made or not, or *whether the cause assigned originally for the seizure be that for which the condemnation takes place, provided the adjudication is for a sufficient cause."* (Italics supplied.) See discussion in 23 Am. Jur., Forfeitures and Penalties, § 13. There can be no question but that the legislative body of Duluth under the ordinance fixed the event upon which a divestiture of claimant's title and right to intoxicating liquors would take place, which was his conviction upon the charge of possessing such liquor for the purpose of sale contrary to the ordinance. If, therefore, there is sufficient evidence to justify defendant's conviction under the ordinance, that will serve as a proper basis for the forfeiture, even though the search was made under the statute.

■ We do not see merit in defendant's claim that the ordinance is inconsistent with the state law. It is true that when an ordinance conflicts with a well-established law of the state the ordinance must yield and the statute prevail. 4 Dunnell, Dig. & Supp. § 6752, and cases cited. But the ordinance here is not in conflict with the state law. The provisions in the statute and ordinance with reference to the regulation of intoxicating liquor are quite similar. The main difference is that, under the ordinance, the liquor is forfeited to the city of Duluth, sold at public auction by the chief of police, and the money is turned into the public safety fund; whereas, under the state law, the liquor is sold under order of court and the proceeds turned into the county school fund. This is a mere difference in detail in the execution of the forfeiture provisions. Holding as we do that there was authority for the city to pass the forfeiture provisions of the ordinance, we do not believe there is any conflict

or inconsistency between the ordinance and state law merely because of this difference in detail. "A city ordinance, covering a subject also covered by a state law, is valid, if it is consistent with the state law and preserves the standard of regulation as moulded by such general law." City of Duluth v. Evans, 158 Minn. 450, 197 N. W. 737. See, also, State v. Weeks, 216 Minn. 279, 12 N. W. (2d) 493.

■ Defendant also contends that, because the liquor was admittedly worth from $7,500 to $8,000, the municipal court was without jurisdiction to provide for its forfeiture and sale. We have held to the contrary. The provision for forfeiture follows as an incident to the conviction as a proper exercise of the police power. State v. Harris, 50 Minn. 128, 52 N. W. 387; State v. Hanson, 114 Minn. 136, 130 N. W. 79, *supra*. In the Hanson case, the court said at p. 138, 130 N. W. 80:

"The fact that the statute (section 1554) provides for the destruction of the liquors and the sale of other property used in the business of keeping an unlicensed drinking place, which in this case were of value of $600, does not affect the jurisdiction of the justice to hear and determine the complaint for a violation of the statute, for the reason that the forfeiture and disposition of such property follows, as an incident to the conviction, as a proper exercise of the police power of the state."

*Cf.* Manter v. Petrie, 123 Minn. 333, 143 N. W. 907, and Starrett v. Pedersen, 198 Minn. 416, 270 N. W. 131. Defendant cites Sullivan v. City of Oneida, 61 Ill. 242, in support of his position. Suffice it to say that this case is contrary to the rule followed in this state and to the great weight of authority. State v. Hanson, *supra*. Edmunds v. State ex rel. Dedge, 199 Ala. 555, 559, 74 So. 965, 967; Steward v. State, 180 Ind. 397, 406, 103 N. E. 316, 320, *supra*; State v. Arlen, 71 Iowa 216, 32 N. W. 267; Blumardt v. McDonald, 36 N. D. 518, 162 N. W. 409; Robinson Cadillac Motor Car Co. v. Ratekin, 104 Neb. 369, 177 N. W. 337; State ex rel. Hodge v. Gordon, 95 Wash. 289, 163 P. 772.

■ Defendant further asserts that the ordinance is violative of Minn. Const. art. 4, § 27, which provides that no law shall embrace more than one subject which shall be expressed in its title, and of Chapter III, Section 9, of the Duluth charter, which contains a similar provision.

The ordinance is entitled: "An Ordinance to License and Regulate the Sale of Intoxicating Liquor Within the Corporate Limits of the City of Duluth; to Prohibit the Sale of Unlicensed Liquor, and to Define and Prohibit Blind Pigs; and to Provide Penalties for the Violation Thereof."

Defendant contends that, because the title is silent as to search, seizure, and forfeiture, it does not conform to the charter or constitutional requirement. Under a constitutional requirement that the subject of an enactment shall be expressed in its title, the rule, applicable generally to other statutes, is applied to liquor statutes. 30 Am. Jur., Intoxicating Liquors, § 46. The title is not designed as an index of the law; a fair suggestion of the subject matter is all that is necessary. Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944, *supra*. Here, the title related to the general subject of the regulation of the sale of intoxicating liquors, and it was not necessary to express in the title the forfeiture provision, which had to do with the proper enforcement of the ordinance. Anyone would reasonably expect that an ordinance under the general title regulating the sale of intoxicating liquors would include provisions for enforcement such as forfeiture provisions. In Rose v. State, 171 Ind. 662, 87 N. E. 103, 17 Ann. Cas. 228, the court disposed of the same contention raised here by defendant by holding that provisions relating to search, seizure, and the destruction of liquor are germane to a title expressing the purpose of regulating and licensing sales of liquor. *Cf.* City of Duluth v. Abrahamson, 96 Minn. 39, 104 N. W. 682.

Neither is there merit in the contention that the ordinance embraces more than one subject. "To constitute duplicity of subject matter, an act must embrace two or more dissimilar and discordant subjects which cannot reasonably be said to have any legitimate

connection." Sverkerson v. City of Minneapolis, 204 Minn. 393, 283 N. W. 557, *supra*. The matter of forfeiture has a logical and material connection with the subject of regulating the sale of intoxicating liquor, and we hold, therefore, that there was no duplicity of subject matter in the ordinance.

6. Defendant urges further that the evidence is insufficient to sustain his conviction of possession of liquor for the purpose of sale.

"We have always held that something more than possession is necessary to sustain a conviction of possession with intent to sell. There must be some accompanying act or fact, * * * tending to show that a sale was to attend the possession." State v. Scheid, 185 Minn. 496, 498, 241 N. W. 572.

See, also, State v. Kelly, 218 Minn. 247, 15 N. W. (2d) 554. However, the finding of a large quantity of liquor upon premises where there is no license to sell permits an inference that it was there for the purpose of sale rather than for the use of the occupant. State v. Ronnenberg, 214 Minn. 272, 7 N. W. (2d) 769. Under the circumstances in the instant case, possession alone, even of the large quantity of liquor found, would have been insufficient to sustain the conviction. It appears that defendant was in possession of that liquor by virtue of having had a license to sell. A large stock of liquor was on hand when the license expired. He paid the federal revenue tax on it in June or October 1943. Absent any testimony of sale or intent to sell, the possession of the liquor under these circumstances would have been satisfactorily explained. But, in addition to the showing of possession, there was undisputed evidence of separate sales of liquor by defendant at his place of business and upon the premises where the liquor was stored. Defendant pleaded guilty to one sale and did not deny the other. It is true, there was no direct evidence that the liquor was actually obtained from the stock in the basement, but, circumstantially, the evidence is very persuasive that such was the case. The liquor was sold in the men's "latrine" adjacent to the restaurant on the first floor shortly after midnight in each instance. Some time elapsed between the request for the purchase and the time the

liquor was obtained. The two brands of liquor sold on separate occasions were the same as found in defendant's possession in the basement. Defendant was on the stand during the trial. He made no claim that the two quarts of whiskey were obtained from any other place than the stock in the basement. It was not incumbent upon him to prove his innocence, but he chose to take the stand and had the opportunity of explaining where he had obtained the liquor which he admitted he sold. That was a matter peculiarly within his own knowledge. As this court said in State v. Capito, 215 Minn. 320, 322, 9 N. W. (2d) 734:

"* * * Absent any explanation on his part, the evidence leads to no other conclusion than that his possession was for the very purpose of making sales thereof."

We conclude that the evidence in this case was ample to sustain the conviction that defendant had the entire stock of liquor in his possession for the purpose of sale. State v. Ronnenberg, 214 Minn. 272, 7 N. W. (2d) 769, *supra;* State v. McBride, 215 Minn. 123, 9 N. W. (2d) 416; State v. Capito, *supra.* *Cf.* State v. Mueller, 218 Minn. 450, 16 N. W. (2d) 777.

■ Defendant claims error in the exclusion of certain evidence. He asserts this alleged error in his assignment of errors and in the statement of questions involved, but he does not set out this claimed error in his points and authorities, nor does he discuss it in his brief. Ordinarily, this court will not "consider any point not urged in appellant's points and authorities, * * * This is so, even if the point is made by the appellant in the oral argument, unless it is voluntarily discussed and submitted to the court by counsel for the respondent." Cutting v. Weber, 77 Minn. 53, 54, 79 N. W. 595. But, because the city has referred to this assignment in its brief, we have given it consideration. Defendant contends that the court improperly excluded testimony showing negotiations as to the sale of his entire stock of liquor to the Elks Club and the exclusion of a letter from the state liquor control commissioner approving such sale. We believe this evidence should have

been received as bearing upon the question of the intent to sell. No prejudice resulted to defendant, however, from the exclusion of such testimony. The fact that defendant admitted he sold liquor while such negotiations were pending is sufficient to show that he could be endeavoring to dispose of his entire stock of liquor and, at the same time, be guilty of possessing such liquor for the pur-pose of sale contrary to the ordinance.

Affirmed.

